**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BIDMYCRIB LLC, d/b/a | ) | |
| BidMyCrib.com, individually and on | ) | Case No.  11-8647 |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GROUPON INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff BidMyCrib LLC d/b/a BidMyCrib.com ("Plaintiff" or "BidMyCrib"), individually and on behalf of all others similarly situated (the "Class," as defined below), by its undersigned counsel, brings this action against defendant Groupon Inc. ("Groupon," the "Company," or "Defendant").   Plaintiff makes the following allegations upon personal knowledge as to those allegations specifically pertaining to itself, and upon information and belief as to all other matters.

## I.  NATURE OF THE ACTION

1.      This action arises out of Groupon's practice of intentionally, and without authorization, accessing and altering electronically stored emails that Groupon's merchant-clients – including Plaintiff and the other Class members – received from Groupon.

2.      As more fully explained below, Groupon is a company that features vouchers or "Groupons" that it sells to consumers for redemption at specific local or national merchants on whose behalf Groupon offers discounted or promotional deals.   These merchants, including Plaintiff and the other Class members, are referred to herein as Groupon's "merchant-clients."

3.     Groupon corresponds with its merchant-clients by email and enters into contracts with its merchant-clients, entitled "Merchant Agreements," the operative copies of which Groupon transmits to its merchant-clients within the body of an email message.

4.     Unbeknownst to Plaintiff and the other Class members, however, Groupon accesses its merchant-clients' emails containing the Merchant Agreements while those emails are in post-transmission electronic storage and alters the content of those emails.

5.     Groupon's practice of accessing and altering its merchant-clients' electronically stored emails, as alleged herein, violates the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, and gives rise to this action.

## II.  PARTIES

*Plaintiff*

6.     BidMyCrib – an Internet-based home improvement marketplace that operates through the website www.bidmycrib.com – is a limited liability corporation organized under the laws of the State of Ohio with its principal place of business located in Cincinnati, Ohio. BidMyCrib's sole owner and member, Morgan Jones, is also a citizen of the State of Ohio.

7.     BidMyCrib's website enables property owners to submit project requests online that detail the improvement, remodeling, or maintenance project they wish to have performed. BidMyCribs posts the requirements and links the property owners to contractors – including local electricians, plumbers, and painters – who competitively bid on the project requests.  The owner then chooses among the bidding contractors, and as relevant to the allegations herein, pays for the contractor's services through the BidMyCrib website.

*Defendant*

8.      Groupon, Inc. is a public company (NASDAQ: GRPN) incorporated under the laws of the State of Delaware and headquartered in Chicago, Illinois.

9.      As briefly summarized above, Groupon is effectively a "deal of the day" website that sells and markets "Groupons" (or "Vouchers," as used herein) from Groupon's merchant-clients – including Plaintiff and the other members of the Class described herein – to Groupon's subscriber-customers.  Groupon's subscriber-customers are then able to redeem those Vouchers – which generally offer deep discounts on the merchant-client(s)' goods or services – directly with the merchant-client(s).

10.      Groupon was founded in November 2008 and has grown exponentially since that time.  As of September 30, 2011, Groupon had 10,418 employees.  In the third quarter of 2011 alone, Groupon had revenues of $430.2 million and an electronic presence in 175 North American geographic markets in which Groupon offers deals from not less than tens of thousands of merchant-clients.

### III.  JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed Class are citizens of states different than that of Groupon.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. § 2707.

12.     This Court has personal jurisdiction over Groupon because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Illinois and because Groupon has its principal place of business in, is authorized to do business in, has sufficient minimum contacts with, and/or otherwise intentionally avails itself of the markets in the State of Illinois.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, as a corporation subject to personal jurisdiction in this District, Groupon resides in this District and a substantial portion of the events and conduct giving rise to the violations complained of herein occurred in this District.

## IV.  COMMON FACTUAL ALLEGATIONS

14.     Groupon provides an electronic marketplace in which Groupon's subscriber-customers may obtain deals or discounts on goods or services provided by merchants. Subscriber-customers obtain those deals or discounts by purchasing a "Groupon" (or "Voucher," as used herein) from Groupon that the subscriber-purchaser redeems directly with the merchant-client(s) on whose behalf Groupon issues the Voucher(s).

15.     Groupon publicizes these Vouchers by sending daily emails to its massive and localized subscribers list and by listing the Vouchers on its website – www.groupon.com.

16.     Groupon's merchant-clients arrange with Groupon to sell these Vouchers primarily as a means to attract customers and increase sales of their goods and services.

17.     Groupon makes money off the sale of the Vouchers by retaining a percentage of the price paid by the subscriber-purchaser for the Voucher.

18.     Once Groupon has completed selling Vouchers for a given deal with a given merchant-client, Groupon will remit the funds collected – less Groupon's fee – to the merchant-client.

19.     For every Voucher program a merchant-client wishes to offer through Groupon, Groupon and the merchant-client enter into a standardized written contract (the "Merchant Agreement").

20.     Groupon transmits the Merchant Agreement to its merchant-clients in the body of an email message from Groupon to the merchant-client.

21.     The merchant-client indicates its agreement to the Merchant Agreement by sending Groupon a return email stating "Agree" in the subject line or body of the return email.

22.     Undisclosed by Groupon to its merchant-clients – including Plaintiff and the other Class members – however, is the fact that Groupon accesses and then alters the content of the merchant-clients' emails containing the Merchant Agreement(s) *after* those merchant-clients receive and open those emails and place them in electronic storage.

23.     Groupon's access to and alteration of its merchant-clients' electronically stored email communications is done without its merchant-clients' authorization or consent.

24.     During the time period relevant to this action, Groupon intentionally accessed and altered – without authorization or consent – its merchant-clients' electronically stored emails containing the Merchant Agreement.  Groupon altered at least one particular section of the Merchant Agreement pertaining to Voucher expiration dates.

25.     Before Groupon accessed and altered its merchant-clients' electronically stored emails, Section 4 of each Merchant Agreement contained within the emails at issue stated as follows:

4.   Compliance with Gift Card, Gift Certificate and Abandoned Property Laws. Merchant further agrees to comply with the Voucher terms and conditions as set forth on the Website, and to ensure that the Vouchers comply with any and all Laws that govern vouchers, gift cards, coupons, and/or gift certificates, including but not limited to, the Credit Card Act of 2009 and any state or local Laws governing the imposition of expiration dates, service charges, dormancy fees or other terms and conditions of the Voucher. Merchant shall allow the purchaser to redeem the Groupon with Merchant for the amount paid by purchaser for the Voucher (i.e. the cash or redemption value of the Voucher) for the applicable term specified under applicable state or federal Laws and shall allow the cash redemption of the Vouchers as required by applicable state or federal Laws. To the extent required by applicable escheat or abandoned or unclaimed property Laws, Merchant shall be solely responsible for and agrees to report and pay over to the applicable local, state or federal governmental agency any unredeemed cash value of any Voucher issued under this Agreement. Merchant is responsible for keeping track of the cash amount paid by the purchaser for the Voucher and any unredeemed balance of that cash amount to ensure compliance with this section.

26.   While they were in the merchant-clients' electronic storage, however, Groupon altered each of those electronically stored emails by changing the language of the previously agreed-to Merchant Agreements within the body of those emails, to add a new sentence at the end of Section 4 that was not previously there.

27.   That new sentence, which Groupon inserted into Plaintiff's and the other Class members' electronically stored emails without their authorization or consent, reads as follows:

Furthermore, Merchant agrees that so long as an appointment is made for the redemption of a voucher before the expiration date, the voucher will be fully honored without restriction even though the services may be fulfilled after the redemption date.

28.   By its above-described conduct, Groupon has intentionally accessed and altered, without Plaintiff's or other Class members' authorization or consent, electronic communications while they were in electronic storage through the unauthorized use of facilities through which electronic communication services are provided.

## V.  FACTS PERTAINING TO PLAINTIFF BIDMYCRIB

29.     On October 27, 2011, BidMyCrib corresponded with Groupon by email to enter into a Merchant Agreement with Groupon to enable Groupon to offer Vouchers for a specific BidMyCrib "Merchant Offering" in two local markets – Cincinnati and Dayton, Ohio – on Groupon's website for sale to the general public.

30.     After engaging in this email correspondence, BidMyCrib printed a physical copy of the email containing the Merchant Agreement in its body that it received from Groupon and retained a copy of this printed email for its records.  A copy of this printed email is attached hereto as Exhibit A.

31.     Of particular importance, Section 4 of BidMyCrib's Merchant Agreement in the body of the email **did not** contain the sentence "[f]urthermore, Merchant agrees that so long as an appointment is made for the redemption of a voucher before the expiration date, the voucher will be fully honored without restriction even though the services may be fulfilled after the redemption date" at the end of the section.  *See* Exhibit A at p.5.

32.     After July 2011, following a dispute with Groupon regarding BidMyCrib's obligations under the Merchant Agreement, BidMyCrib referred to and opened the electronically stored copy of the email containing the Merchant Agreement, and discovered that it had been materially altered.

33.     Specifically, the email containing BidMyCrib's Merchant Agreement now contained an entirely new sentence, stating "[f]urthermore, Merchant agrees that so long as an appointment is made for the redemption of a voucher before the expiration date, the voucher will be fully honored without restriction even though the services may be fulfilled after the

redemption date."   A copy of that same electronically stored email containing the altered Merchant Agreement is attached hereto as Exhibit B.

34.     Upon information and belief, Groupon intentionally accessed and then altered BidMyCrib's email containing the Merchant Agreement in the email body while it was in electronic storage and without BidMyCrib's authorization or consent.

## VI.  CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action individually and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All entities that entered into one or more Merchant Agreements with Groupon, from the date of Groupon's inception through the present day (the "Class Period").

 (the "Class").   Excluded from the Class are Groupon and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judges to whom this case is assigned and any immediate family members thereof.

36.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, Class members number at least in the tens of thousands and are dispersed throughout the United States.  The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Groupon's books and records.  Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

38. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

      a. whether Groupon engaged in the wrongful conduct alleged herein;

      b. whether Groupon's practices violate applicable law;

      c. whether Plaintiff and the other Class members are entitled to statutory damages under the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.; and

      d. whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to injunctive relief.

39. Groupon engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on its own behalf and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Groupon's uniform misconduct described above and were thus all subject to the same unauthorized access to and alteration of their electronically stored emails, including, specifically, Groupon's unauthorized access to and alteration of the electronically stored emails containing Merchant Agreements in their body as alleged herein. Further, there are no defenses available to Groupon that are unique to Plaintiff.

41. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members it seeks to represent; it has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and its counsel.

42. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Groupon, so it would be impracticable for Class members to individually seek redress for Groupon's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the Class members' claims, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VII.   CLAIM ALLEGED

### Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.

43.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

44.    Plaintiff brings this claim individually and on behalf of the other members of the Class alleged herein.

45.    The Stored Communications Act ("SCA") provides that whoever intentionally accesses without authorization a facility through which an electronic communication service is provided or intentionally exceeds authorization to access that facility and thereby alters an electronic communication while it is in electronic storage commits a statutory violation for which any person aggrieved thereby may, in a civil action, recover damages and attorney fees as well as injunctive and other relief as provided by law. *See* 18 U.S.C. §2701(a); 18 U.S.C. § 2707.

46.    Email is a facility through which an electronic communication service is provided and the above-described emails belonging to Plaintiff and those belonging to the other Class members are electronic communications within the meaning of the SCA.

47.    These emails are held in electronic storage by Plaintiff and the other Class members.

48.    As described above, Groupon intentionally accessed and altered these electronically stored emails without Plaintiff's or the other Class members' authorization or consent.

49.    By virtue of this conduct, Groupon has violated the SCA.

50.    As a result of Groupon's conduct, Plaintiff and the other Class members have sustained damages in an amount to be determined at trial, but in no event less than $1,000 per violation, as provided by law.

51.     Plaintiff seeks judgment on its own behalf and on behalf of the other Class members in their favor and against Groupon awarding it and the other Class members the maximum statutory damages available under 18 U.S.C. § 2707, in addition to costs of suit and attorney fees, an injunction barring Groupon from accessing or altering Plaintiff's and the other Class members' electronically stored communications, and any and all other relief as allowed by law.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in its favor and against Defendant, Groupon, Inc., as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B.      Enjoining Groupon from accessing or altering Plaintiff's and the other Class members' stored electronic communications;

C.      Ordering Groupon to pay statutory damages, as provided by the Stored Communications Act, to Plaintiff and the other Class members;

D.      Ordering Groupon to pay punitive damages, as allowable by law, to Plaintiff and the other Class members;

E.      Ordering Groupon to pay both pre- and post-judgment interest on any amounts awarded;

F.      Ordering Groupon to pay attorney fees and costs of suit; and

G.      Ordering such other and further relief as may be just and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this complaint so triable.

**Dated:**  December 6, 2011

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

By:  /s/ Adam J. Levitt
Adam J. Levitt (ARDC #6216433)
Edmund S. Aronowitz (ARDC #6304587)
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel: 312-984-0000
Fax: 312-984-0001
levitt@whafh.com
aronowitz@whafh.com

Joseph J. Siprut (ARDC #6279813)
**SIPRUT PC**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603
Telephone:  (312) 588-1440
Facsimile:  (312) 427-1850
jsiprut@siprut.com

29873

# EXHIBIT A

**Morgan Jones**

**To:**    Lauren Toan (ltoan@groupon.com)
**Subject:**    RE: AGREE: Groupon Rate Confirmation - AGREE

AGREE

**From:** no-reply@salesforce.com [mailto:no-reply@salesforce.com] **On Behalf Of** Lauren Toan
**Sent:** Wednesday, October 27, 2010 5:38 PM
**To:** morgan.jones@bidmycrib.com
**Subject:** Groupon Rate Confirmation



Hi Morgan,

If you are in agreement with the below Merchant Agreement, **please acknowledge your agreement by replying to this email with "Agree" in the subject line or body.** If you have any questions, please don't hesitate to call me at 312-242-2057.

And now for the legal stuff...

# Merchant Agreement
Date of Agreement: 10/27/2010
Merchant Name(herein referred to as "Merchant"): BidMyCrib.com
BidMyCrib.com
7081 Tarragon Court, Liberty Township, OH 45011

This "Merchant Agreement" or "Agreement", effective as of the above date ("Effective Date"), is entered into by and between Groupon, Inc., a Delaware corporation with principal offices at 600 West Chicago Ave., Suite 620, Chicago, IL 60610 and Merchant ("Merchant"). The parties shall be referred to collectively as the "Parties."

Merchant wishes to offer its products or services for sale through vouchers (the "Voucher(s)") which can be redeemed for Merchant's goods and/or services at a discount, which are offered to the public for purchase at www.groupon.com (the "Website") and are activated ("Activated") only upon reaching an agreed upon volume of purchasers ("Volume Threshold") and an agreed upon discount; and Groupon wishes to sell Merchant's Voucher to the purchasers at the Website, the Merchant being the seller of the goods and the services, and Groupon being the seller of the intangible rights contained in the Merchant's Voucher. Therefore, in consideration of the mutual covenants of the Parties and other valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

**Definitions:**

**"Merchant Offering" means $85 for two-Room Painting From BidMyCrib.com ($420 Value).**

**"Unit Price" means $85.00.**

**"Volume Threshold" means 25.**

**"Voucher Expiration Date" means 6 months from feature date.**

**"Remittance Amount" means $42.50 for each unit collected by Groupon for each Voucher minus a 2.5% credit card fee from the total.**

**"Total Remittance Amount" means the aggregate total Remittance Amounts collected by Groupon for all Vouchers.**

**"Special Instructions" means Limit 2 per household. PAINT NOT INCLUDED Not valid with other offers.**
**10X12 walls or smaller (trim painting is extra fee)**
**\* walls up to 12' high**
**\* Up to 2 coats if needed**
**\* No caulking (extra fee if caulking is required)**
**\* No primer (extra fee if required)**
**\* No large hole patching or drywall installing or taping (extra fee if required)**
**· All wall fixtures need to be removed from walls**

**· Furniture must be a min. of 3 feet from the walls.**

1. Voucher Program.

1.1. Voucher Information

Groupon shall promote the Voucher per Section 1.2. Merchant is the seller of the goods and services described in Voucher. The Voucher itself will be sent to the purchaser electronically. The purchaser will then redeem the Voucher from the Merchant.

a.    Merchant is making the Merchant Offering available pursuant to the Vouchers.

b.    Merchant's obligations under this Merchant Agreement (and with respect to any Voucher) are contingent upon selling the Volume Threshold by the Volume Threshold Deadline.

c.    Delivery of deals: Groupon may offer the Merchant's Voucher up to the maximum quantity listed above in a variety of formats: through its feature deal-of the day, through its various side deals, through its marketplace, or through its affiliate network. All of these formats may be offered to part or all of Groupon's subscriber base, or the communities associated with Groupon's affiliates. Merchant will be notified prior to any new delivery of deal for final approval.

d.    Each Voucher will be subject to no restrictions other than as provided herein. Each Voucher will expire on the Voucher Expiration Date. However, after the Voucher Expiration Date, Merchant shall, for the amount of time required by applicable law: (1) continue to allow unredeemed Vouchers to be redeemed for the product or service specified on the Voucher or (2) allow the Voucher to be redeemed to purchase goods or services from Merchant for up to the amount the purchaser paid for the Voucher.  Merchant is aware and acknowledges that the law may require Merchant to redeem Vouchers beyond their stated expiration dates, and Merchant agrees to do so (to the extent applicable law requires).

e.    Partial redemptions: If a customer redeems a Voucher for less than its face value, the Merchant will be responsible for issuing a credit or cash equal to the difference between the face value and the amount redeemed if required by law.

f.    Merchant agrees that in providing the goods/services that are the subject of the Voucher, it will not impose any extra or additional fees or charges that contradict the terms set forth on the face of the Voucher.

g.    Merchant will comply with the Special Instructions (if any).

1.2 Voucher Sale. Merchant authorizes Groupon to offer, sell and distribute Vouchers, in accordance with this Agreement and subject to the "Terms of Sale" located at http://www.groupon.com/doc/terms#tos and the restrictions set forth in this Agreement. Merchant acknowledges that Groupon may terminate the publication or promotion of the Voucher at any time. Groupon reserves the right to increase the Volume Threshold at its sole discretion.

1.3 Voucher Publication and Delivery. Vouchers shall be published on the Website in accordance with Section 1.1.  Groupon will offer the Vouchers for sale on dates in its discretion.  If there is a Maximum Number of Vouchers designated, Groupon will use reasonable efforts to cease publishing the Voucher once it has received offers to buy that number of Vouchers equal to the Maximum Number of Vouchers.. The last date on which Groupon publishes the Voucher for sale to its users shall be considered the "Run Date".  The Voucher shall be activated, which means capable of being used for purchases with the Merchant in accordance with the terms of the Voucher, only when the Volume Threshold of purchasers has been met. At the time that the Volume Threshold has been met; Groupon will electronically deliver the Voucher to the purchaser.  Once a Voucher is Activated and delivered to the purchaser, Merchant shall be solely responsible for all customer service in connection with the Voucher and for supplying all goods and services specified in the Voucher. Groupon further reserves the continuing right, but shall not be obligated, to reject, revise, or discontinue publishing any Voucher and to require Merchant to edit or modify the same for any reason, including, without limitation, to conform the Voucher to Groupon specifications or applicable Laws.

1.4  Payment. Groupon shall remit payment to Merchant according to the schedule and terms set forth in this Section 1.4. Groupon will pay Merchant the Remittance Amount for each Voucher properly activated for which a purchaser has fully paid Groupon.  Merchant is registered for sales and use tax collection purposes, and shall be responsible for paying all sales and use taxes related to the goods and services described in the offer. Groupon shall forward one-third of the then-collected Remittance Amount Total to Merchant within five (5) business days after the Run Date, one-third of the then-collected Remittance Amount Total within thirty (30) business days after the Run Date, and one-third of the then-collected Remittance Amount Total within sixty (60) business days after the Run Date.  Amounts retained by Groupon are compensation to Groupon for the service of advertising and selling the Vouchers for Merchant.

1.5 Deposit Merchant acknowledges that by virtue of this Agreement they are going to receive funds that have been remitted to Groupon by its end customers which effectively amount to prepaid customer deposits that Merchant will be holding onto until such time as the goods and/or services are delivered. Merchant shall insure that at all times these funds remain available to be returned to Groupon and/or its customer if Merchant is either unable or unwilling to perform its obligations under this Agreement. The obligation to keep these funds in tact applies to both the Merchant and the authorized agents or executors of this Agreement. Groupon shall have uncontested title and ownership on all amounts that have been paid by Groupon to Merchant until such time as the Merchant fulfills its obligations under the terms of this Agreement and delivers the end goods or services as defined herein. Furthermore, the Merchant acknowledges that in the event of a bankruptcy proceeding or other liquidation, any funds which are being held by Merchant for good or services not delivered shall be immediately returned to Groupon, and no third party shall have any right or claim to these funds which are being held by Merchant but which solely belong to Groupon and its end customers. Should the amount of the Deposit exceed $50,000 in the aggregate, Groupon reserves the right to review Merchant's credit history prior to advancing funds.

1.6  License. Merchant grants to Groupon a non-exclusive worldwide license and right to use.

3

reproduce, license, display, distribute and transmit the Merchant's name, logo and any trademarks ("Merchant Marks") and any photographs, graphics, artwork, text and other content provided or specified by Merchant ("Content") in connection with the marketing, promotion, sale or distribution of Vouchers, in any and all media or formats in which such Vouchers are marketed, promoted, transmitted, sold, or distributed, including but not limited to, on the Groupon Website.

2. Term and Termination. This Agreement shall continue in effect for the longer of one (1) year following the Effective Date or the last date when a customer of Groupon redeems a Voucher offered by Merchant through Groupon. Groupon may terminate this Agreement at any time for any reason by giving the Merchant written notice of such termination. The expiration of the Term shall not in any way affect the purchaser's usage of the Voucher, or Merchant's obligation for redemption of the Voucher. Upon execution of the Agreement, Merchant agrees that Merchant will not promote an online offer with respect to the products or services described in this Agreement of similar or greater value for a period up to 90 days from the Effective Date, plus a minimum of 90 days following the Merchant's date of feature on the Groupon Website. Sections 3, 4, 5, 6 and any claims for payments due Groupon, including but not limited to section 1.5 hereunder shall survive any expiration or termination of this Agreement.

3. Merchant Representations and Warranties, and Indemnification.

3.1 Merchant represents and warrants throughout the Term that: (a) Merchant has the right, power and authority to enter into this Agreement; (b) Merchant is registered for sales and use tax collection purposes in all states in which Merchant's goods and services will be provided pursuant to the terms and presentation of the Voucher; (c) the Voucher, upon being Activated and delivered by Groupon shall be available immediately for redemption by the purchaser; (d) the terms and conditions of the Voucher, including any discounts or goods and services offered thereunder, comply with all, and do not and will not violate any, local, state or federal law, statute, rule, regulation, or order ("Laws"), including but not limited to, any law and/or regulation governing the use, sale, and/or distribution of alcohol, any Laws governing vouchers, gift cards, coupons, and/or gift certificates; (e) Merchant owns all right, title and interest in the Marks and Content and has the right to grant the licenses in the Marks and Content stated in this Agreement; (f) the Vouchers and any advertising or promotion of Merchant's products and services relating thereto will not constitute false, deceptive or unfair advertising or disparagement under any applicable Laws; and (g) the Marks and the Content do not and will not violate any copyright, trademark, or other intellectual property right or right of privacy or publicity of any third party or any Laws.

3.2 Merchant agrees to defend, indemnify and hold Groupon, its affiliated and related entities, and any of their officers, directors, agents and employees, harmless from and against any claims, lawsuits, investigations, penalties, damages, losses or expenses (including but not limited to attorney's fees and costs) arising out of or relating to any of the following: (a) any breach or alleged breach by Merchant of this Agreement or the representations and warranties stated in Section 3.1; (b) any claim for state sales or use tax obligations ("Taxes") arising from the sale and subsequent redemption of a Voucher; (c) any claim by any local, state or federal governmental entity for unredeemed Vouchers or unredeemed cash values of Vouchers or any other amounts under any applicable abandoned or unclaimed property or escheat law, including but not limited to any claims for penalties and interest ("Abandoned Property Claims"); (d) any claim arising out of a violation of law and/or regulation governing the use, sale, and/or distribution of alcohol; or (e) any claim arising out of or relating to the products and services provided by Merchant, including but not limited to, any claims for false advertising, product defects, personal injury, death, or property damages. Without limiting the foregoing, Merchant shall pay any monies owed to any party, as well as all attorney's fees, related to any action against, or determinations against, Groupon related to any action to pursue Groupon for Taxes or Abandoned Property Claims.

4. Compliance with Gift Card, Gift Certificate and Abandoned Property Laws. Merchant further agrees to comply with the Voucher terms and conditions as set forth on the Website, and to ensure that the Vouchers comply with any and all Laws that govern vouchers, gift cards, coupons, and/or gift certificates, including but not limited to, the Credit Card Act of 2009 and any state or local Laws governing the imposition of expiration dates, service charges, dormancy fees or other terms and conditions of the Voucher. Merchant shall allow the purchaser to redeem the Groupon with Merchant for the amount paid by purchaser for the Voucher (i.e. the cash or redemption value of the Voucher) for the applicable term specified under applicable state or federal Laws and shall

allow the cash redemption of the Vouchers as required by applicable state or federal Laws. To the extent required by applicable escheat or abandoned or unclaimed property Laws, Merchant shall be solely responsible for and agrees to report and pay over to the applicable local, state or federal governmental agency any unredeemed cash value of any Voucher issued under this Agreement. Merchant is responsible for keeping track of the cash amount paid by the purchaser for the Voucher and any unredeemed balance of that cash amount to ensure compliance with this section.

5. Confidentiality and Intellectual Property Rights.

5.1 The terms of this Agreement are confidential, and Merchant agrees to not disclose the terms described herein to any party (other than its employees, parent companies, and shareholders on a need-to-know basis only after each has taken the necessary precautions of the kind generally taken with confidential information to preserve the confidentiality of the information made available to such individuals). The terms contained herein are confidential between Groupon and Merchant and not known to the general public outside of this Agreement, thus any breach of this confidentiality provision by Merchant shall be considered a material breach of this Agreement and will result in irreparable and continuing damage to Groupon for which there will be no adequate remedy at law; and in the event of such breach, Groupon will be entitled to injunctive relief and/or a decree for specific performance, and such other and further relief as may be proper (including monetary damages if appropriate).

5.2 Merchant agrees and acknowledges that Groupon owns all right, title, and interest in the Groupon Website, Groupon trademarks, and any software, technology or tools used by Groupon to promote, market, sell, generate, or distribute the Vouchers (collectively the "Groupon IP"). Merchant shall not rent, lease, sublicense, distribute, transfer, copy, reproduce, download, display, modify or timeshare the Groupon IP or any portion thereof, or use such Groupon IP as a component of or a base for products or services prepared for commercial sale, sublicense, lease, access or distribution. Merchant shall not prepare any derivative work based on the Groupon IP. Merchant shall not translate, reverse engineer, decompile or disassemble the Groupon IP.

6.Limitation of Liability. EXCEPT FOR INDEMNIFICATION OBLIGATIONS HEREUNDER, IN NO EVENT SHALL EITHER PARTY BE LIABLE OR OBLIGATED TO THE OTHER PARTY OR ANY THIRD PARTY IN ANY MANNER FOR ANY SPECIAL, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL, PUNITIVE, OR INDIRECT DAMAGES OF ANY KIND REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT PRODUCT LIABILITY, OR OTHERWISE, EVEN IF INFORMED OF THE POSSIBILITY OF ANY SUCH DAMAGES IN ADVANCE, GROUPON'S SOLE AND COMPLETE LIABILITY TO MERCHANT FOR ANY CLAIMS ARISING OUT OF RELATING TO THIS AGREEMENT OR ANY ERRORS, OMISSIONS OR MISPLACEMENTS OF THE VOUCHERS SHALL BE LIMITED TO THE AMOUNT OF OPPORTUNITY FEES PAID HEREUNDER. THIS LIMITATION OF LIABILITY SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND NOTWITHSTANDING THE FAILURE OF ANY LIMITED REMEDY.

Any claim arising out of or relating to any error or omission in a Voucher must be made within one (1) year of first publication of the Voucher. Otherwise, the claim shall be deemed waived by Merchant.

7. Other. The Parties are independent contractors. Nothing in this Agreement shall be construed to create a joint venture, partnership, franchise, or an agency relationship between the Parties. Neither Party has the authority, without the other Party's prior written approval, to bind or commit the other Party in any way.

This agreement constitutes the entire agreement between the parties relating to its subject matter and supersedes all prior or contemporaneous oral or written agreements concerning such subject matter. This agreement may be amended or modified only by mutual agreement of authorized representatives of the Parties in writing.

Merchant may not assign or transfer its rights or obligations under this Agreement, whether by operation of law or otherwise, without Groupon's prior written consent.

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. GROUPON DOES NOT WARRANT OR GUARANTEE THAT THE SERVICES OFFERED ON OR THROUGH THE WEBSITE SHALL BE UNINTERRUPTED OR ERROR-FREE, THAT THE VOUCHERS WILL BE ERROR-FREE OR THAT ANY ERRORS, OMISSIONS OR MISPLACEMENTS IN THE VOUCHER WILL BE CORRECTED, OR THAT VOUCHERS WILL RESULT IN ANY REVENUE OR PROFIT FOR MERCHANT.

This Agreement shall be governed by the laws of the State of Delaware, without giving effect to any principles that may provide for the application of the laws of another jurisdiction. Any disputes, controversies, or claims in connection with or arising out of this Agreement, its negotiation, breach, existence, validity or termination, shall be referred to and finally determined by arbitration in Chicago, Illinois before a single arbitrator who is a member of the American Arbitration Association, from which arbitration there shall be no appeal. Such arbitration shall be held in Chicago, Illinois, in accordance with the Commercial Rules of the American Arbitration Association, with the governing law to be that of the State of the defendant and the laws of the United States applicable therein. The award rendered by the arbitrator shall be final and binding on all parties, and judgment upon the reward rendered by the arbitrator may be entered in any court of competent jurisdiction.

Thank you,

Lauren Toan
phone: 312-242-2057
ltoan@groupon.com
www.groupon.com

# EXHIBIT B

**Morgan Jones**

| | |
|---|---|
| **From:** | Morgan C. Jones <morgan.jones@bidmycrib.com> |
| **Sent:** | Wednesday, October 27, 2010 6:11 PM |
| **To:** | 'Lauren Toan' |
| **Subject:** | RE: AGREE:  Groupon Rate Confirmation - AGREE |

AGREE

---

**From:** no-reply@salesforce.com [mailto:no-reply@salesforce.com] **On Behalf Of** Lauren Toan
**Sent:** Wednesday, October 27, 2010 5:38 PM
**To:** morgan.jones@bidmycrib.com
**Subject:** Groupon Rate Confirmation



Hi Morgan,

If you are in agreement with the below Merchant Agreement, **please acknowledge your agreement by replying to this email with "Agree" in the subject line or body.** If you have any questions, please don't hesitate to call me at 312-242-2057.

And now for the legal stuff...

# Merchant Agreement

Date of Agreement: 10/27/2010
Merchant Name(herein referred to as "Merchant"): BidMyCrib.com
BidMyCrib.com
7081 Tarragon Court, Liberty Township, OH 45011
,

This "Merchant Agreement" or "Agreement", effective as of the above date ("Effective Date"), is entered into by and between Groupon, Inc., a Delaware corporation with principal offices at 600 West Chicago Ave., Suite 620, Chicago, IL 60610 and Merchant ("Merchant"). The parties shall be referred to collectively as the "Parties."

Merchant wishes to offer its products or services for sale through vouchers (the "Voucher(s)") which can be redeemed for Merchant's goods and/or services at a discount, which are offered to the public for purchase at www.groupon.com (the "Website") and are activated ("Activated") only upon reaching an agreed upon volume of purchasers ("Volume Threshold") and an agreed upon discount; and Groupon wishes to sell Merchant's Voucher to the purchasers at the Website, the Merchant being the seller of the goods and the services, and Groupon being the seller of the intangible rights contained in the Merchant's Voucher.  Therefore, in consideration of the mutual covenants of the Parties and other valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## Definitions:

**"Merchant Offering" means $85 for two-Room Painting From BidMyCrib.com ($420 Value).**

**"Unit Price" means $85.00.**

**"Volume Threshold" means 25.**

**"Voucher Expiration Date" means 6 months from feature date.**

**"Remittance Amount" means $42.50 for each unit collected by Groupon for each Voucher minus a 2.5% credit card fee from the total.**

**"Total Remittance Amount" means the aggregate total Remittance Amounts collected by Groupon for all Vouchers.**

**"Special Instructions" means Limit 2 per household. PAINT NOT INCLUDED Not valid with other offers.**
**10X12 walls or smaller (trim painting is extra fee)**
**\* walls up to 12' high**
**\* Up to 2 coats if needed**
**\* No caulking (extra fee if caulking is required)**
**\* No primer (extra fee if required)**
**\* No large hole patching or drywall installing or taping (extra fee if required)**
**· All wall fixtures need to be removed from walls**

**· Furniture must be a min. of 3 feet from the walls.**

1. Voucher Program.

1.1. Voucher Information

Groupon shall promote the Voucher per Section 1.2. Merchant is the seller of the goods and services described in Voucher. The Voucher itself will be sent to the purchaser electronically. The purchaser will then redeem the Voucher from the Merchant.

a.     Merchant is making the Merchant Offering available pursuant to the Vouchers.

b.     Merchant's obligations under this Merchant Agreement (and with respect to any Voucher) are contingent upon selling the Volume Threshold by the Volume Threshold Deadline.

c.     Delivery of deals: Groupon may offer the Merchant's Voucher up to the maximum quantity listed above in a variety of formats: through its feature deal-of the day, through its various side deals, through its marketplace, or through its affiliate network. All of these formats may be offered to part or all of Groupon's subscriber base, or the communities associated with Groupon's affiliates. Merchant will be notified prior to any new delivery of deal for final approval.

d.     Each Voucher will be subject to no restrictions other than as provided herein. Each Voucher will expire on the Voucher Expiration Date. However, after the Voucher Expiration Date, Merchant shall, for the amount of time required by applicable law: (1) continue to allow unredeemed Vouchers to be redeemed for the product or service specified on the Voucher or (2) allow the Voucher to be redeemed to purchase goods or services from Merchant for up to the amount the purchaser paid for the Voucher.  Merchant is aware and acknowledges that the law may require Merchant to redeem Vouchers beyond their stated expiration dates, and Merchant agrees to do so (to the extent applicable law requires).

e.    Partial redemptions: If a customer redeems a Voucher for less than its face value, the Merchant will be responsible for issuing a credit or cash equal to the difference between the face value and the amount redeemed if required by law.

f.    Merchant agrees that in providing the goods/services that are the subject of the Voucher, it will not impose any extra or additional fees or charges that contradict the terms set forth on the face of the Voucher.

g.    Merchant will comply with the Special Instructions (if any).

1.2 Voucher Sale. Merchant authorizes Groupon to offer, sell and distribute Vouchers, in accordance with this Agreement and subject to the "Terms of Sale" located at http://www.groupon.com/doc/terms#tos and the restrictions set forth in this Agreement. Merchant acknowledges that Groupon may terminate the publication or promotion of the Voucher at any time. Groupon reserves the right to increase the Volume Threshold at its sole discretion.

1.3 Voucher Publication and Delivery. Vouchers shall be published on the Website in accordance with Section 1.1.  Groupon will offer the Vouchers for sale on dates in its discretion.  If there is a Maximum Number of Vouchers designated, Groupon will use reasonable efforts to cease publishing the Voucher once it has received offers to buy that number of Vouchers equal to the Maximum Number of Vouchers.. The last date on which Groupon publishes the Voucher for sale to its users shall be considered the "Run Date".  The Voucher shall be activated, which means capable of being used for purchases with the Merchant in accordance with the terms of the Voucher, only when the Volume Threshold of purchasers has been met. At the time that the Volume Threshold has been met; Groupon will electronically deliver the Voucher to the purchaser.  Once a Voucher is Activated and delivered to the purchaser, Merchant shall be solely responsible for all customer service in connection with the Voucher and for supplying all goods and services specified in the Voucher. Groupon further reserves the continuing right, but shall not be obligated, to reject, revise, or discontinue publishing any Voucher and to require Merchant to edit or modify the same for any reason, including, without limitation, to conform the Voucher to Groupon specifications or applicable Laws.

1.4  Payment. Groupon shall remit payment to Merchant according to the schedule and terms set forth in this Section 1.4. Groupon will pay Merchant the Remittance Amount for each Voucher properly activated for which a purchaser has fully paid Groupon.  Merchant is registered for sales and use tax collection purposes, and shall be responsible for paying all sales and use taxes related to the goods and services described in the offer. Groupon shall forward one-third of the then-collected Remittance Amount Total to Merchant within five (5) business days after the Run Date, one-third of the then-collected Remittance Amount Total within thirty (30) business days after the Run Date, and one-third of the then-collected Remittance Amount Total within sixty (60) business days after the Run Date.  Amounts retained by Groupon are compensation to Groupon for the service of advertising and selling the Vouchers for Merchant.

1.5 Deposit Merchant acknowledges that by virtue of this Agreement they are going to receive funds that have been remitted to Groupon by its end customers which effectively amount to prepaid customer deposits that Merchant will be holding onto until such time as the goods and/or services are delivered. Merchant shall insure that at all times these funds remain available to be returned to Groupon and/or its customer if Merchant is either unable or unwilling to perform its obligations under this Agreement. The obligation to keep these funds in tact applies to both the Merchant and the authorized agents or executors of this Agreement. Groupon shall have uncontested title and ownership on all amounts that have been paid by Groupon to Merchant until such time as the Merchant fulfills its obligations under the terms of this Agreement and delivers the end goods or services as defined herein. Furthermore, the Merchant acknowledges that in the event of a bankruptcy proceeding or other liquidation, any funds which are being held by Merchant for good or services not delivered shall be immediately returned to Groupon, and no third party shall have any right or claim to these funds which are being held by Merchant but which solely belong to Groupon and its end customers. Should the amount of the Deposit exceed $50,000 in the aggregate, Groupon reserves the right to review Merchant's credit history prior to advancing funds.

1.6 License. Merchant grants to Groupon a non-exclusive worldwide license and right to use

3

reproduce, license, display, distribute and transmit the Merchant's name, logo and any trademarks ("Merchant Marks") and any photographs, graphics, artwork, text and other content provided or specified by Merchant ("Content") in connection with the marketing, promotion, sale or distribution of Vouchers, in any and all media or formats in which such Vouchers are marketed, promoted, transmitted, sold, or distributed, including but not limited to, on the Groupon Website.

2. Term and Termination. This Agreement shall continue in effect for the longer of one (1) year following the Effective Date or the last date when a customer of Groupon redeems a Voucher offered by Merchant through Groupon.  Groupon may terminate this Agreement at any time for any reason by giving the Merchant written notice of such termination.  The expiration of the Term shall not in any way affect the purchaser's usage of the Voucher, or Merchant's obligation for redemption of the Voucher.  Upon execution of the Agreement, Merchant agrees that Merchant will not promote an online offer with respect to the products or services described in this Agreement of similar or greater value for a period up to 90 days from the Effective Date, plus a minimum of 90 days following the Merchant's date of feature on the Groupon Website. Sections 3, 4, 5, 6 and any claims for payments due Groupon, including but not limited to section 1.5 hereunder shall survive any expiration or termination of this Agreement.

3. Merchant Representations and Warranties, and Indemnification.

3.1 Merchant represents and warrants throughout the Term that: (a) Merchant has the right, power and authority to enter into this Agreement; (b) Merchant is registered for sales and use tax collection purposes in all states in which Merchant's goods and services will be provided pursuant to the terms and presentation of the Voucher; (c) the Voucher, upon being Activated and delivered by Groupon shall be available immediately for redemption by the purchaser; (d) the terms and conditions of the Voucher, including any discounts or goods and services offered thereunder, comply with all, and do not and will not violate any, local, state or federal law, statute, rule, regulation, or order ("Laws"), including but not limited to, any law and/or regulation governing the use, sale, and/or distribution of alcohol, any Laws governing vouchers, gift cards, coupons, and/or gift certificates; (e) Merchant owns all right, title and interest in the Marks and Content and has the right to grant the licenses in the Marks and Content stated in this Agreement; (f) the Vouchers and any advertising or promotion of Merchant's products and services relating thereto will not constitute false, deceptive or unfair advertising or disparagement under any applicable Laws; and (g) the Marks and the Content do not and will not violate any copyright, trademark, or other intellectual property right or right of privacy or publicity of any third party or any Laws.

3.2 Merchant agrees to defend, indemnify and hold Groupon, its affiliated and related entities, and any of their officers, directors, agents and employees, harmless from and against any claims, lawsuits, investigations, penalties, damages, losses or expenses (including but not limited to attorney's fees and costs) arising out of or relating to any of the following: (a) any breach or alleged breach by Merchant of this Agreement or the representations and warranties stated in Section 3.1; (b) any claim for state sales or use tax obligations ("Taxes") arising from the sale and subsequent redemption of a Voucher; (c) any claim by any local, state or federal governmental entity for unredeemed Vouchers or unredeemed cash values of Vouchers or any other amounts under any applicable abandoned or unclaimed property or escheat law, including but not limited to any claims for penalties and interest ("Abandoned Property Claims"); (d) any claim arising out of a violation of law and/or regulation governing the use, sale, and/or distribution of alcohol; or (e) any claim arising out of or relating to the products and services provided by Merchant, including but not limited to, any claims for false advertising, product defects, personal injury, death, or property damages. Without limiting the foregoing, Merchant shall pay any monies owed to any party, as well as all attorney's fees, related to any action against, or determinations against, Groupon related to any action to pursue Groupon for Taxes or Abandoned Property Claims.

4. Compliance with Gift Card, Gift Certificate and Abandoned Property Laws. Merchant further agrees to comply with the Voucher terms and conditions as set forth on the Website, and to ensure that the Vouchers comply with any and all Laws that govern vouchers, gift cards, coupons, and/or gift certificates, including but not limited to, the Credit Card Act of  2009 and any state or local Laws governing the imposition of expiration dates, service charges, dormancy fees or other terms and conditions of the Voucher. Merchant shall allow the purchaser to redeem the Groupon with Merchant for the amount paid by purchaser for the Voucher (i.e. the cash or redemption value

allow the cash redemption of the Vouchers as required by applicable state or federal Laws. To the extent required by applicable escheat or abandoned or unclaimed property Laws, Merchant shall be solely responsible for and agrees to report and pay over to the applicable local, state or federal governmental agency any unredeemed cash value of any Voucher issued under this Agreement. Merchant is responsible for keeping track of the cash amount paid by the purchaser for the Voucher and any unredeemed balance of that cash amount to ensure compliance with this section 4. Furthermore, Merchant agrees that so long as an appointment is made for the redemption of a voucher before the expiration date, the voucher will be fully honored without restriction even though the services may be fulfilled after the redemption date.

5. Confidentiality and Intellectual Property Rights.

5.1 The terms of this Agreement are confidential, and Merchant agrees to not disclose the terms described herein to any party (other than its employees, parent companies, and shareholders on a need-to-know basis only after each has taken the necessary precautions of the kind generally taken with confidential information to preserve the confidentiality of the information made available to such individuals).  The terms contained herein are confidential between Groupon and Merchant and not known to the general public outside of this Agreement, thus any breach of this confidentiality provision by Merchant shall be considered a material breach of this Agreement and will result in irreparable and continuing damage to Groupon for which there will be no adequate remedy at law; and in the event of such breach, Groupon will be entitled to injunctive relief and/or a decree for specific performance, and such other and further relief as may be proper (including monetary damages if appropriate).

5.2 Merchant agrees and acknowledges that Groupon owns all right, title, and interest in the Groupon Website, Groupon trademarks, and any software, technology or tools used by Groupon to promote, market, sell, generate, or distribute the Vouchers (collectively the "Groupon IP"). Merchant shall not rent, lease, sublicense, distribute, transfer, copy, reproduce, download, display, modify or timeshare the Groupon IP or any portion thereof, or use such Groupon IP as a component of or a base for products or services prepared for commercial sale, sublicense, lease, access or distribution. Merchant shall not prepare any derivative work based on the Groupon IP. Merchant shall not translate, reverse engineer, decompile or disassemble the Groupon IP.

6.Limitation of Liability. EXCEPT FOR INDEMNIFICATION OBLIGATIONS HEREUNDER, IN NO EVENT SHALL EITHER PARTY BE LIABLE OR OBLIGATED TO THE OTHER PARTY OR ANY THIRD PARTY IN ANY MANNER FOR ANY SPECIAL, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL, PUNITIVE, OR INDIRECT DAMAGES OF ANY KIND REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT PRODUCT LIABILITY, OR OTHERWISE, EVEN IF INFORMED OF THE POSSIBILITY OF ANY SUCH DAMAGES IN ADVANCE, GROUPON'S SOLE AND COMPLETE LIABILITY TO MERCHANT FOR ANY CLAIMS ARISING OUT OF RELATING TO THIS AGREEMENT OR ANY ERRORS, OMISSIONS OR MISPLACEMENTS OF THE VOUCHERS SHALL BE LIMITED TO THE AMOUNT OF OPPORTUNITY FEES PAID HEREUNDER. THIS LIMITATION OF LIABILITY SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND NOTWITHSTANDING THE FAILURE OF ANY LIMITED REMEDY.

Any claim arising out of or relating to any error or omission in a Voucher must be made within one (1) year of first publication of the Voucher. Otherwise, the claim shall be deemed waived by Merchant.

7. Other. The Parties are independent contractors. Nothing in this Agreement shall be construed to create a joint venture, partnership, franchise, or an agency relationship between the Parties. Neither Party has the authority, without the other Party's prior written approval, to bind or commit the other Party in any way.

This agreement constitutes the entire agreement between the parties relating to its subject matter and supersedes all prior or contemporaneous oral or written agreements concerning such subject matter. This agreement may be amended or modified only by mutual agreement of authorized representatives of the Parties in writing.

Merchant may not assign or transfer its rights or obligations under this Agreement, whether by

operation of law or otherwise, without Groupon's prior written consent.

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. GROUPON DOES NOT WARRANT OR GUARANTEE THAT THE SERVICES OFFERED ON OR THROUGH THE WEBSITE SHALL BE UNINTERRUPTED OR ERROR-FREE, THAT THE VOUCHERS WILL BE ERROR-FREE OR THAT ANY ERRORS, OMISSIONS OR MISPLACEMENTS IN THE VOUCHER WILL BE CORRECTED, OR THAT VOUCHERS WILL RESULT IN ANY REVENUE OR PROFIT FOR MERCHANT.

This Agreement shall be governed by the laws of the State of Delaware, without giving effect to any principles that may provide for the application of the laws of another jurisdiction. Any disputes, controversies, or claims in connection with or arising out of this Agreement, its negotiation, breach, existence, validity or termination, shall be referred to and finally determined by arbitration in Chicago, Illinois before a single arbitrator who is a member of the American Arbitration Association, from which arbitration there shall be no appeal. Such arbitration shall be held in Chicago, Illinois, in accordance with the Commercial Rules of the American Arbitration Association, with the governing law to be that of the State of the defendant and the laws of the United States applicable therein. The award rendered by the arbitrator shall be final and binding on all parties, and judgment upon the reward rendered by the arbitrator may be entered in any court of competent jurisdiction.

Thank you,

Lauren Toan
phone: 312-242-2057
ltoan@groupon.com
www.groupon.com